**United States District Court**
For the Northern District of California

1
2
3
4
5            IN THE UNITED STATES DISTRICT COURT
6           FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8   PROTEGO NETWORKS, INC., a Delaware            No.  C 05-00464 MJJ
    corporation
9
              Plaintiff,                          **ORDER GRANTING IN PART AND**
10                                                **DENYING IN PART**
        v.                                        **COUNTERDEFENDANTS' MOTION TO**
11                                                **DISMISS**
    DANIEL ZENCHELSKY,
12
              Defendant.
13  _____
14  DANIEL ZENCHELSKY,
15           Counterclaimant
16      v.
17  PROTEGO NETWORKS LLC; PARTHA
    BHATTACHARYA; IMIN LEE; and YU LIAO,
18
             Counterdefendants
19
20  _____/
21
22       Pending before the Court is Counterdefendants Protego Networks, LLC, Dr. Partha

23  Bhattacharya, Imin Lee, and Yu Liao's (collectively, "Counterdefendants") Motion to Dismiss First

24  Amended Counterclaim (Doc. #38).  Counterclaimant Daniel Zenchelsky has filed an Opposition (Doc.

25  #42), and Counterdefendants have filed a Reply (Doc. #44).  For the following reasons, the Court grants

26  Counterdefendants' Motion in part, and denies it in part.

27  I.    Background

28       Protego Networks, Inc., designs and develops enterprise threat mitigation appliances.  The

    concept for Protego Networks began in October 2001, when Ms. Lee and Dr. Bhattacharya began

collaborating on a business plan and development of intellectual property.  In May 2002, Mr. Zenchelsky joined the Protego working group, serving primarily as a record keeper and organizer for the working group meetings.  Approximately two months later, on July 4, 2002, Mr. Zenchelsky quit the working group.  A dispute subsequently arose between Mr. Zenchelsky and Protego regarding Mr. Zenchelsky's ownership rights in Protego and in certain intellectual property.  As a result, Protego filed a Complaint against Mr. Zenchelsky, seeking a declaratory judgment determining the parties' rights to Protego and Protego's intellectual property.  (Doc. #1.)

On July 6, 2005, Mr. Zenchelsky answered and concurrently filed a Counterclaim against Protego Networks, LLC, Ms. Lee, Dr. Bhattacharya, and Yu Liao.  (Doc. #17.)  Subsequently, on August 17, 2005, Mr. Zenchelsky filed an Amended Answer and Counterclaim.  (Doc. #37.)  The material allegations of Mr. Zenchelsky's Amended Counterclaim are summarized as follows.

Mr. Zenchelsky alleges that Ms. Lee contacted him in 2002, for the purpose of having him create, design, invent, and develop new technology necessary for the Protego business enterprise.  Mr. Zenchelsky indicated that he would join the Protego working group and lead the development of its technology for the internet security system, on the condition that he receive an equity stake in Protego and be made its Chief Technology Officer.  He alleges that, in response, Ms. Lee promised him an ownership interest in 1/5 of the business enterprise; 1/5 of the stock of the Protego company when formed; and the position of CTO.  He further alleges that, "[i]n consideration and in reasonable reliance on these promises, [he] undertook to invent and did invent both alone and in collaboration with [Shigang] Chen the new technology," which he claims constitutes "the IP" at issue in this matter.

Mr. Zenchelsky alleges that, "[i]n violation of the promises made to [him], [Ms. Lee and [Dr.] Bhattacharya conspired to remove [him] as CTO," thereby forcing him to leave Protego.  (*Id.* at ¶17.)  According to Mr. Zenchelsky, he left Protego "with the reasonable belief that Protego would not use his IP and would either dissolve the business enterprise or design other intellectual property and technology that did not use or derive from his IP."

Following his departure from Protego, Counterdefendants sent Mr. Zenchelsky a proposed agreement to purchase his IP.  Mr. Zenchelsky, however, rejected the offer.  Thereafter, on December 20, 2004, Mr. Zenchelsky learned that Cisco Systems, Inc., had announced that it was acquiring Protego

1   for $65 million.  This news prompted Mr. Zenchelsky to investigate whether Counterdefendants had

2   misappropriated and used his IP.  Toward this end, Mr. Zenchelsky obtained a copy of United States

3   Patent Application No. 2004/0260763 ("the '763 patent application").  Reviewing the '763 patent

4   application, Mr. Zenchelsky discovered that the claims described in the application contain his IP, but

5   he and Mr. Chen were not named as co-inventors.  Rather, Mr. Zenchelsky claims that the '763 patent

6   application falsely identifies Dr. Bhattacharya and Mr. Liao as co-inventors.  Mr. Zenchelsky alleges

7   he never provided Counterdefendants any right to use his IP and, to date, has not received any

8   compensation for their unauthorized use of his IP or a 1/5 ownership interest for the work he performed

9   for Protego's benefit.

10      Based on these allegations, Mr. Zenchelsky asserts claims against Counterdefendants for: (1)

11  fraud; (2) conversion; (3) breach of implied-in-fact contract; (4) copyright infringement; (5) declaratory

12  judgment as to authorship, inventorship, and ownership; (6) correction of ownership; and (7)

13  misappropriation of scientific ideas.  Counterdefendants now move pursuant to Federal Rule of Civil

14  Procedure 12(b)(6) to dismiss each of Mr. Zenchelsky's claims.

15  II.     Legal Standard

16      A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim.  *Navarro*

17  *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Because the focus of a 12(b)(6) motion is on the legal

18  sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face

19  of the complaint.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

20  Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or

21  failed to allege sufficient facts under a cognizable legal theory.  *See SmileCare Dental Group v. Delta*

22  *Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d

23  696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

24  Further, dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of

25  facts in support of a claim.  *See Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990).  In

26  considering a 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as

27  true and construes them in the light most favorable to the plaintiff.  *See Shwarz v. United States*, 234

28  F.3d 428, 435 (9th Cir. 2000).

III.     Discussion

A.     First Cause of Action - Fraud

In his first claim, Mr. Zenchelsky alleges that, "[Ms.] Lee represented to [him] that he was CTO of Protego and would own a 1/5 ownership in Protego." (Doc. #37 at ¶28.)  He further alleges that Ms. Lee knew that these representations and promises were false, and that she made then in an effort to persuade him to work for Protego for the purpose of creating IP.  (*Id.*)  He alleges that he justifiably relied on Lee's representations, and as a result of such reliance, he suffered damages.  Additionally, Mr. Zenchelsky alleges that, "Protego, [Dr.] Bhattacharya, and [Mr.] Liao all defrauded [Mr.] Zenchelsky by placing Bhattacharya's and Liao's names as co-inventors on the '763 patent application when they knew they were not the inventors of that portion of the IP which is described in the '763 patent application." (*Id.* at ¶32.)  Counterdefendants move to dismiss Mr. Zenchelsky's fraud claim because: (1) it fails to meet the heightened pleading requirements for fraud; and (2) it fails to allege the necessary element of reliance.

Federal Rule of Civil Procedure 9(b) provides that, "[i]In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."   Interpreting this heightened pleading requirement, the Ninth Circuit has explained:

> The language of Rule 9(b) itself reveals that it is more than simply a reiteration of requirements stated elsewhere. Rule 9(b) requires particularized allegations of the circumstances constituting fraud.  The time, place, and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth.

*Decker v. Glendfed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).[1]  The Court will therefore review Mr. Zenchelsky's allegations against this standard.

Mr. Zenchelsky alleges two instances of fraud: the first relates to Ms. Lee's statements that he would be CTO of Protego and would receive a 1/5 interest in the business; the second, that Counterdefendants defrauded him by naming Dr. Bhattacharya and Mr. Liao as inventors on the '763

---

[1]"Under California law, 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'" *Vess*, 317 F.3d at 1105.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   patent application.   As to the first alleged instance of fraud, Counterdefendants argue that Mr.

2   Zenchelsky failed to allege the when, where, and how of the purported fraud, or the times, dates, places,

3   benefits received, or other details of the alleged fraudulent activity.   Reviewing Mr. Zenchelsky's

4   allegations, the Court agrees that he has failed to allege with particularity when[2] and where Ms. Lee

5   made the alleged misrepresentations.   Additionally, although Mr. Zenchelsky makes the conclusory

6   allegation that Ms. Lee knew that her representations were false, he has not alleged with particularity

7   "the circumstances indicating falseness."   Thus, to plead a viable fraud claim, Mr. Zenchelsky must set

8   forth facts indicating why Ms. Lee's statements were false at the time she made them.   In all other

9   respects, the Court finds Mr. Zenchelsky's allegations sufficient.

10          As to Mr. Zenchelsky's second alleged instance of fraud concerning the naming of inventors on

11  the '763 patent application, the Court finds it deficient in several respects, as well.   Most notably, Mr.

12  Zenchelsky has failed to allege that he relied on the Counterdefendants' alleged misrepresentation of

13  the inventors on the '763 patent application.   In his Opposition, Mr. Zenchelsky contends that he has

14  pled the reliance element, and cites the Court to paragraphs 17-19 and 21-25, in support.   The Court has

15  reviewed these excerpts, and finds absolutely no language suggesting reliance.   Moreover, as

16  Counterdefendants point out, Mr. Zenchelsky has not alleged how Counterdefendants defrauded <u>him</u>

17  by making the alleged misrepresentations in the '763 patent application.   Indeed, in light of the fact that

18  the PTO was the recipient of the patent application, Mr. Zenchelsky must allege with specificity how

19  Counterdefendants intended to defraud him by making such representations.

20          In sum, because the Court finds that Mr. Zenchelsky failed to plead the elements of his fraud

21  claim with the heightened degree of particularity required under Rule 9(b), it **GRANTS**

22  Counterdefendants' Motion to Dismiss with respect to the First Cause of Action.   Additionally, to allow

23  Mr. Zenchelsky an opportunity to correct the deficiencies outlined above, the Court will grant Mr.

24  Zenchelsky leave to amend his fraud claim.

25          B.      Second Cause of Action - Conversion

26          In his Second Cause of Action for conversion, Mr. Zenchelsky alleges that, "[w]hen Protego,

27

28          [2]Mr. Zenchelsky concedes as much in his Opposition, noting in footnote 5 that if the Court
    requires him to do so, he "can attempt to identify dates for additional specificity."   (Opp. at 8.)

Lee and Partha filed the '763 application . . . they knew that they were using intellectual property that was owned by [Mr.] Zenchelsky, for their own economic gain, without his permission." (ACC at ¶36.) He alleges that, in doing so, "Counterdefendants converted the intellectual property including the patent application for their own use without the intention of returning same to Zenchelsky or to pay him for the use thereof." (*Id.* at ¶37.)

In their Motion, Counterdefendants argue that Mr. Zenchelsky's conversion claim fails as a matter of law because he still retains possession of his intangible information and ideas, and thus cannot allege that he has been deprived of the beneficial use of that information. (Mot. at 9) (citing *VSL Corp. v. Gen. Techs., Inc.*, No. C 96-20446, 1997 Dist. Lexis 22457, at *11 (N.D. Cal. July 21, 1997)). Mr. Zenchelsky, however, maintains that the Amended Counterclaim sufficiently alleges that "Protego's use and wholesale incorporation of Zenchelsky's property as the basis for its '763 patent application legally dispossesses [him] of his property and any beneficial use of it." (Resp. at 9.) The Court agrees with Mr. Zenchelsky.

California defines conversion as, "the wrongful exercise of dominion over another's personal property in denial or inconsistent with his rights in the property." *Kasdan, Simonds, McIntyre, Epstein & Martin v. World Sav. & Loan Ass'n (In re Emery)*, 317 F.3d 1064, 1069 (9th Cir. 2003). The elements of conversion are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act inconsistent with the property rights of the plaintiff; and (3) damages. *Id.* (citing *Burlesci v. Petersen*, 80 Cal. Rptr. 2d 704, 706 (1988)). "It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." *Spates v. Dameron Hosp. Ass'n*, 7 Cal. Rptr. 3d 597, 608 (Cal. Ct. App. 2003) (quoting *Oakdale Vill. Group v. Fong*, 50 Cal. Rptr. 2d 810 (Cal Ct. App. 1996)).

Further, under California law, intangible property, including intellectual property, may serve as the basis for a conversion claim. *See Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2003) (internet domain name could serve as basis for registrant's conversion claim); *A&M Records, Inc. v. Heilman*, 142 Cal. Rptr. 390 (1977) (musical recordings); *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 725 (9th Cir. 1984) (audio broadcast). Here, Mr. Zenchelsky has alleged that

United States District Court

For the Northern District of California

1    Counterdefendants used his intellectual property in their patent application without his permission,

2    thereby causing him damage.  Counterdefendants argue that, because Mr. Zenchelsky still retains copies

3    of the information that they allegedly converted, he has not been deprived of the beneficial use of such

4    property, thus destroying his conversion claim.  Aside from making this conclusory statement,

5    Counterdefendants have not identified what that use is.  Thus, at this stage, the Court must reject

6    Counterdefendants' argument.[3]

7        Additionally, Counterdefendants contend that Section 301 of the Copyright Act preempts Mr.

8    Zenchelsky's conversion claim.  Generally, "[a] state law cause of action is preempted by the Copyright

9    Act if two elements are present.  First, the rights that a plaintiff asserts under state law must be 'rights

10   that are equivalent' to those protected by the Copyright Act.  Second, the work involved must fall within

11   the 'subject matter' of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103."  *Kodadek v. MTV*

12   *Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998) (internal citations omitted).  In their Motion,

13   Counterdefendants assert that because the basis of Mr. Zenchelsky's claim is that Counterdefendants'

14   alleged use and reproduction of Mr. Zenchelsky's intangible information, and not the physical taking

15   and retention of tangible property, the Copyright Act preempts his conversion claim.  In support,

16   Counterdefendants cite *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115 (N.D. Cal. 2001).  There,

17   the plaintiff asserted a conversion claim, along with eleven other claims, against the defendants based

18   on their unauthorized incorporation of plaintiff's program in software without paying the plaintiff or

19   entering into a licensing agreement.  The defendants moved to dismiss, arguing that the federal

20   Copyright Act preempted the plaintiffs' claims.  In analyzing the plaintiff's conversion claim, the court

21   noted that, generally, "claims for conversion of physical property . . . involve an extra element beyond

22   unauthorized copying since they require a plaintiff to prove that the defendant wrongfully obtained

23   possession over a specific piece of property."  *Id.* at 1130.  However, the court reasoned that, "where

24   a plaintiff is only seeking damages from a defendant's reproduction of a work - and not the actual return

25   of a physical piece of property - the claim is preempted."  *Id.*  With respect to the plaintiff's conversion

26   claim, the court noted that the plaintiff was not seeking the return of a tangible piece of property, and

27

28       [3]Counterdefendants shall not be precluded from re-asserting their argument that Mr.
     Zenchelsky's claim fails as a matter of law because he retains beneficial use of his IP at the summary
     judgment stage.

United States District Court
For the Northern District of California

because he sent the defendants the copy of the software program, he could not claim that they wrongfully obtained possession of it. Accordingly, the plaintiff's claim was solely based on the defendants' wrongful reproduction of the program without the plaintiff's permission. The court thus held that, because this is "the essence of a claim for copyright infringement," the Copyright Act preempted the plaintiff's conversion claim.

Counterdefendants argue that, like the plaintiff in *Firoozye*, Mr. Zenchelsky's conversion claim is based on Counterdefendants' use and reproduction of his IP, not on the physical taking and retention of tangible property. Accordingly, they contend that it is preempted under the Copyright Act. Mr. Zenchelsky, however, argues that the Amended Counterclaim "alleges dispossession, seeks return of and/or compensation for the taking of his work and seeks damages and injunctive relief for unlawful deeds that go well beyond just reproduction of his work." (Opp. at 15.) Additionally, he argues that the Amended Counterclaim alleges that Counterdefendants "converted tangible objects embodying [his] intellectual property." (*Id*. at 16.) For these reasons, he claims that the Copyright Act does not preempt his conversion claim.

Reviewing the Amended Counterclaim, Mr. Zenchelsky has alleged that Counterdefendants took his IP and used it in the '763 patent application without his permission and "without the intention of returning same to Zenchelsky or to pay him for the use thereof." (ACC at ¶37.) Thus, unlike the plaintiff in *Firoozye*, Mr. Zenchelsky has alleged that Counterdefendants wrongfully obtained possession of his IP and had no intention of returning it to him. Mr. Zenchelsky's claim, therefore, is not exclusively based on Counterdefendants' alleged unpermitted use and reproduction of the IP, but on their wrongful acquisition and failure to return that property. Consequently, the Court finds that, as pled, Mr. Zenchelsky's conversion claim is qualitatively different from a copyright infringement claim, and is therefore not preempted under the Copyright Act. The Court therefore **DENIES** Counterdefendants' Motion to Dismiss the Second Cause of Action based on preemption.

C.     Third Cause of Action - Breach of Implied-In-Fact Contract

In his Third Cause of Action, Mr. Zenchelsky asserts a claim for breach of implied-in-fact contract against Protego and Ms. Lee. He alleges that, "[a]t the insistence and request of Protego and Lee, [Mr.] Zenchelsky provided them with the IP, with the expectation, which was fully and clearly

8

United States District Court

For the Northern District of California

1  understood by Protego and [Ms.] Lee, that [Mr.] Zenchelsky would be compensated for its use . . . when

2  and if Protego and Lee used the IP." (ACC at ¶41.)  He further alleges that, "[t]hrough their conduct

3  and representations, Protego and [Ms.] Lee had an implied-in-fact contract that [Mr.] Zenchelsky would

4  be compensated for his IP," and that "Protego and Lee breached the implied-in-fact contract . . . in that

5  they failed to give him the 1/5 ownership in Protego and other compensation for his IP."  (*Id.* at ¶42.)

6

7       Counterdefendants urge the Court to dismiss Mr. Zenchelsky's Third Cause of Action because

8  it is time-barred.  Specifically, they argue that the two-year statutes of limitations applicable to implied-

9  in-fact contract claims period began to run when Mr. Zenchelsky left Protego on July 4, 2002. Because

10  he did not file his claim until 2005, Counterdefendants contend that the claim is untimely.

11       In opposition, Mr. Zenchelsky argues that Counterdefendants overlook that he has alleged two

12  implied-in-fact contracts existed, and that Counterdefendants have misconstrued the terms of both

13  contracts.  According to Mr. Zenchelsky, the terms of the first implied-in-fact contract were that if he

14  created IP for Protego, and Protego subsequently used that IP, he would be the CTO of Protego and

15  would receive a 1/5 ownership interest in the business.  (Opp. at 22.)  As to the terms of the second

16  alleged implied-in-fact contract, Mr. Zenchelsky asserts that, Protego and Ms. Lee represented that if

17  Protego used his IP, they would compensate him.  Under both theories, Mr. Zenchelsky argues that the

18  breach did not occur until Protego used his IP and failed to compensate him.  Although he does not

19  proffer an exact date that Protego's alleged unauthorized use occurred, he advances that his claims

20  accrued when he learned about Protego's use of the IP after reviewing the '763 patent application in

21  December 2004.

22       As the foregoing discussion illustrates, the parties have proffered competing constructions of the

23  alleged implied-in-fact contract(s) that form the basis of Ms. Zenchelsky's Third Cause of Action.

24  Although Counterdefendants have offered a construction, under which Mr. Zenchelsky's claim is

25  untimely, Counterdefendants' construction would require the Court to look beyond the four corners of

26  Mr. Zenchelsky's Amended Counterclaim to discern the terms of the parties' agreement and when a

27  breach occurred.  Consequently, confining its review to the allegations of the Amended Counterclaim,

28  the Court cannot say as a matter of law that Mr. Zenchelsky's Third Cause of Action is time-barred.

9

1   The Court therefore **DENIES** Counterdefendants' Motion to Dismiss with respect to the Third Cause

2   of Action.[4]

3          D.     Fourth Cause of Action - Copyright Infringement

4          In his Fourth Cause of Action, Mr. Zenchelsky asserts a claim for copyright infringement.  He

5   alleges that he has filed copyright registration applications with the United States Copyright Office on

6   certain portions of his IP.  He further alleges that the United States Copyright Office has notified him

7   that the registration for one of his copyright applications is imminent, and that registration for the others

8   should shortly follow.  He claims that, "Protego and the [C]ounterclaim [D]efendants, and/or their

9   predecessors in interest have infringed [his] copyrighted works in that they have claimed, copied, used,

10  created derivative works, and distributed [his] copyrighted works without any right or permission to do

11  so."   (ACC at ¶48.)    Mr. Zenchelsky thus seeks a permanent injunction preventing the

12  Counterdefendants from using the materials set forth in the copyrights and damages stemming from their

13  alleged unpermitted use of such materials.

14         Counterdefendants urge the Court to dismiss the copyright infringement claim because Mr.

15  Zenchelsky has failed "to explain by what acts [and] during what time the counterclaim defendants

16  allegedly infringed Mr. Zenchelsky's works." (Mot. at 14.)  In opposition, Mr. Zenchelsky contends

17  that he has alleged all of the elements necessary to plead a copyright infringement claim.  The Court

18  agrees with Mr. Zenchelsky.

19         "A claim for copyright infringement has two elements: '(1) ownership of the copyright' and (2)

20  infringement - that the defendant copied protected elements of the plaintiff's work." *Kling v. Hallamrk*

21  *Cards, Inc.*, 225 F.3d 1030, 1037 (9th Cir. 2000) (quoting *Three Boys Music Corp v. Bolton*, 212 F.3d

22  477, 481 (9th Cir. 2000)).  Counterdefendants contend that Mr. Zenchelsky failed to specifically allege

23  the alleged acts by Counterdefendants that form the basis of his infringement claim.   However,

24  Counterdefendants fail to cite to any authority requiring Mr. Zenchelsky to comply with a heightened

25  pleading standard when asserting a copyright infringement claim.  Rather, as with most civil claims,

26  Federal Rule of Civil Procedure 8(a) governs.  Specifically, "[A]ll the Rules require is 'a short and plain

27

28         [4]This ruling shall not be construed as barring Counterdefendants from re-asserting their
    challenge based on the statute of limitations period in a later motion supported by the factual record.

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2).  As indicated above, Mr. Zenchelsky has alleged that has filed copyright registration applications; that he is the creator of the copyrighted works in the registrations; and that Counterdefendants have infringed on the copyrighted works in numerous ways.  Thus, Mr. Zenchelsky has pled the necessary elements of a copyright infringement claim,[5] and his allegations comply with Rule 8(a)'s notice-pleading standard.[6]  *See Odnil Music Ltd. v. Katharsis LLC*, 2005 WL 1541090, at *2 (E.D. Cal. June 29, 2005) (applying Rule 8(a) standard to copyright infringement claim).  Accordingly, the Court **DENIES** Counterdefendants' Motion to Dismiss with respect to the Fourth Cause of Action.

> E.   Fifth Cause of Action - Declaratory Judgment as to Authorship, Inventorship and Ownership and Sixth Cause of Action - Correction of Inventorship

In his Fifth Cause of Action, Mr. Zenchelsky seeks a declaratory judgment that he and Mr. Chen, not Dr. Bhattacharya and Mr. Laio, "are the true inventors of the invention described in the specification and set forth in the claims of the '763 patent application.  (ACC at ¶53.)  He further "seeks to have the '763 patent application corrected to reflect this.  (*Id.* at ¶62.)  In his Sixth Cause of Action, Mr. Zenchelsky asserts a claim for "correction of ownership," wherein he alleges that "[t]he '763 application incorrectly states [Dr.] Bhattacharya and [Mr.] Liao are the inventors of the claims described therein." (ACC at ¶58.)  As a result, Mr. Zenchelsky "seeks to have the '763 patent application corrected to reflect Zenchelsky and Chen are the inventors of the claims," or, alternatively, "requests that the [C]ounterdefendants be required to correct the inventorship and/or the '763 patent application by assigned to Zenchelsky and Chen." (*Id.* at ¶62, ¶63.)

In their Motion, Counterdefendants assert that the Court lacks jurisdiction over Mr. Zenchelsky's Fifth and Sixth Causes of Actions, and urges the Court to dismiss both claims.  Specifically, Counterdefendants argue that "[b]ecause these two claims challenge *a pending patent application and not an issued patent*, they are not properly before this Court (the proper jurisdiction, if any, is the United

---

[5]Although Mr. Zenchelsky's copyright registration applications were still pending at the time he filed his Amended Counterclaim, he states in his Opposition that the United States Trademark Office has issued copyrights on those materials.  (Opp. at 20.)

[6]Counterdefendants are free to investigate the specific facts on which Mr. Zenchelsky bases his claim in discovery.

United States District Court

For the Northern District of California

States Patent and Trademark Office[.]" (Motion at 6) (emphasis in original). Additionally, Counterdefendants argue that, because Mr. Chen is not a party in this lawsuit, Mr. Zenchelsky's claims fail to the extent they seek relief for a non-party. Mr. Zenchelsky, however, maintains that, so long as he alleges a valid basis for federal subject matter jurisdiction, the Court may hear his claims.

Under Title 35, applicants for a patent must disclose the names of all inventors. 35 U.S.C. §§ 111, 115-16 (1994). If a patent application or a patent incorrectly identifies the inventors, Title 35 provides specific mechanisms for correcting the inventorship designation. Specifically, 35 U.S.C. § 116 states in pertinent part:

> Whenever through error a person is named in an application for patent as the inventor, or through error an inventor is not named in an application, and such error arose without any deceptive intention on his part, the Director may permit the application to be amended accordingly, under such terms as he prescribes.

Additionally, 35 U.S.C. § 256 provides:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.
>
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

Counterdefendants argue that courts interpreting both Section 256 and 116 have held that an individual has no claim for either a declaration or correction of inventorship when a patent application is still pending. The Court agrees.

Looking at the plain language of Sections 116 and 256, neither section authorizes the district court to correct or otherwise amend the names of the inventors in patent applications. The express language of Section 116 states that whenever a person is either erroneously named as the inventor or erroneously omitted as an inventor in a patent application, "*the Director* may permit the application to be amended accordingly[.]" Section 116 thus places the power to modify patent applications with respect to the inventorship designation exclusively in the hands of the Director of the Patent and

12

United States District Court

For the Northern District of California

1  Trademark Office; it provides no authority for the district court to take such action.  Section 256, on the

2  other hand, provides that whenever a person is erroneously named as the inventor or erroneously omitted

3  as the inventor in "an issued patent," the court "may order correction of the patent . . . and the Director

4  shall issue a certificate accordingly."  Thus, while Section 256 authorizes the district court to take

5  corrective action, that authority is limited to correcting inventorship designation errors in issued patents.

6  Based on the express language of Sections 116 and 256, because Mr. Zenchelsky's Fifth and Sixth

7  Causes of Action relate to the pending '763 patent application, the Court lacks authority to hear his

8  claims.

9        As Counterclaim Defendants point out, several other courts interpreting Sections 116 and 256

10  have reached the same conclusion.  In *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356 n.1 (Fed.

11  Cir. 2004), the Federal Circuit noted in dicta that, "the text of [S]ection 116 . . . only grants the Director

12  of the Patent and Trademark Office the authority to take certain actions and plainly does not create a

13  cause of action in the district courts to modify inventorship on pending patent applications."  In that

14  case,  because the patent had not issued at the time the plaintiff filed its claim, the plaintiff did not have

15  a cause of action to challenge inventorship on the pending patent application.  However, the Federal

16  Circuit noted that, at the time the district court ruled on the defendants' summary judgment motion, the

17  patent had issued, and the district court had held in a footnote that the plaintiff's claim seeking to correct

18  the name was then authorized under Section 256, thereby effecting a constructive amendment of the

19  complaint.[7]  *Id.*

20        Similarly, in *E.I. Du Pont De Nemours & Co. v. Okuley*, 344 F.3d 578, 583-84 (6th Cir. 2003),

21  the Sixth Circuit affirmed a district court's dismissal of a counterclaim of sole inventorship on a pending

22  patent application on the ground that the court lacked jurisdiction.  After noting that because the

23  counterclaim concerned a patent application, Section 116 (and not 256) applied, the Sixth Circuit

24  opined:

25            Comparing these two sections, it is clear that Congress intended to draw
            a distinction between patent applications and issued patents.  While the
26            patent is still in the process of gestation, it is solely within the authority
            of the Director.  As soon as the patent actually comes into existence, the
27            federal courts are empowered to correct any error that the Director may

28  _____

        [7]In this case, the patent application is still pending, making any similar amendment premature.

United States District Court
For the Northern District of California

1
2

> have committed. Such a scheme avoids premature litigation an litigation
> that could become futile if the Director declined to grant a patent or
> voluntarily acceded to the claims of the would-be inventor prior to issue.

3  *Id.* at 584. Based on this reasoning, the Sixth Circuit held that the district court lacked jurisdiction to

4  review the inventorship of the patent application.

5  More recently, the district court in *Sagoma Plastics, Inc. v. Gelardi*, 366 F. Supp. 2d 185, 187

6  (D. Me. 2005), addressed "whether federal patent law empowers [the district court] to determine

7  questions of inventorship prior to the issuance of a patent by the PTO." Closely resembling the

8  allegations in the instant matter, the plaintiff in *Sagoma Plastics* alleged that he jointly developed the

9  invention that was the subject of the defendant's pending patent application, but that the defendant failed

10 (and refused) to name him as a joint inventor. The plaintiff therefore sought a declaratory judgment in

11 the district court that he was a joint inventor. The defendant moved to dismiss the plaintiff's action

12 pursuant to Rule 12(b)(1), arguing that the court lacked jurisdiction to hear patent disputes under Section

13 116. The district court agreed. Comparing the language of Sections 116 and 256, the court reasoned:

14
15
16

> Given the structural parallels between the two provisions, it can be
> inferred that Congress' clear delegation of power to the courts in § 256
> to correct issued patents and its failure to make any such express
> delegation in § 116 indicates conscious choice to bar the courts from
> correcting errors regarding inventorship until after the patent has issued.

17 *Id.* The court also looked to *Eli Lilly* and *Okuley* for guidance, noting that both decisions supported this

18 conclusion. Accordingly, the court held that without a private right of action under § 116, the plaintiff's

19 request for a declaratory judgment naming the correct inventors on a pending patent failed as a matter

20 of law.[8]

21 Nevertheless, Mr. Zenchelsky argues that Section 116 does not operate to bar his claim because

22 Section 116 only relates to correction of inventorship of a pending patent application where the

23 correction is based on a lack of deceptive intent. Mr. Zenchelsky argues that his claim falls outside the

24

25  [8]Although the defendant moved for dismissal pursuant to 12(b)(1), the district court construed
26  the motion as one for dismissal under 12(b)(6). In so doing, the court noted that "[s]ince the issue of
   whether § 116 contains a private right of action depends upon construction of federal law and [the
27  plaintiff's] argument that such a right exists is not wholly insubstantial and frivolous, [the court] does
   have jurisdiction over [the plaintiff's] claim." *Id.* at 190. However, because the court concluded that
28  Section 116 does not provide the plaintiff with a private right of action, the plaintiff had failed to state
   a claim upon which the court could grant relief, making dismissal pursuant to Rule 12(b)(6) appropriate.
   *Id.*

14

1    ambit of Section 116 because he has alleged that Counterdefendants fraudulently substituted their names

2    for the names of the actual inventors.  In support, Mr. Zenchelsky cites *Stark v. Advanced Magnetics,*

3    *Inc.*, 119 F.3d 1551, 1555 (Fed. Cir. 1997), for the proposition that Section 116 "covers only instances

4    of correction of invention that occur without deceptive intent on the part of *all the named and unnamed*

5    *inventors*." (Opp. at 17.)  Mr. Zenchelsky also attempts to distinguish *Eli Lilly*, *Okuley*, and *Sagoma*

6    *Plastics*, on the basis that none of these cases involved allegations of deceptive intent on the part of any

7    of the named or unnamed inventors.   The Court, however, finds Mr. Zenchelsky's arguments

8    unpersuasive.

9          First, to the extent that Mr. Zenchelsky seeks to rely on *Stark*, the Court finds it inapposite to the

10    present matter.  In *Stark*, the plaintiff sought correction of inventorship on six <u>issued patents</u>.  As a

11    defense, the defendants argued that because the plaintiff had alleged that the defendants acted

12    fraudulently in naming themselves as the inventors and omitting the plaintiff in the patent applications,

13    the plaintiff was precluded from asserting a cause of action under Section 256.  The district court agreed,

14    and granted the defendants' motion to dismiss.  On appeal, however, the Federal Circuit reversed,

15    finding that Section 256 "merely precludes any deceptive intention in the inventor that seeks to be

16    restored to a rightful place in the patent." *Id*. at 1556.  As Counterdefendants correctly point out, the

17    plaintiff's claims in *Stark* concerned issued patents, not patent applications.  Thus, the question whether

18    the district court was empowered to entertain claims bearing on a patent application was not at issue.

19    Furthermore, the Federal Court's holding in *Stark* does not advance Mr. Zenchelsky's claims.  As

20    detailed above, the *Stark* court construed Section 256 as allowing deletion of a misjoined inventor in

21    all cases, "whether that error occurred by deception or by innocent mistake," as well as addition of an

22    unnamed actual inventor, so long as the "error of nonjoinder [does not] betray any deceptive intent by

23    that inventor."  Although the court offered an interpretation of Section 116 that required a lack of

24    deceptive intent in cases of both misjoinder and nonjoinder, Section 116 was not at play in *Stark*, and

25    thus the court's interpretation is dicta.  Moreover, the Court agrees with Counterdefendants that, even

26    to the extent that Mr. Zenchelsky alleges that Counterdefendants "knowingly, willfully and

27    fraudulently" misrepresented themselves as the inventors on the '763 patent application, this fact does

28    not undermine the legislative intent expressed by Sections 116 and 256, namely, that the district court

15

**United States District Court**
For the Northern District of California

1  lacks authority to correct errors regarding inventorship until after a patent has issued.  Mr. Zenchelsky

2  has failed to cite any authority, and the Court has found none, compelling the Court to deviate from this

3  principle.

4      In sum, based on the statutory language and case law discussed above, the Court finds that the

5  Fifth and Sixth Causes of Action fail to state claims upon which this Court may grant relief.  The Court

6  therefore **GRANTS** Counterdefendants' Motion to Dismiss with respect to these claims.

7      Alternatively, to the extent that Mr. Zenchelsky's Fifth Cause of Action can be interpreted as

8  one for declaratory judgment as to inventorship of the underlying technology in the '763 patent

9  application, the Court declines to exercise its jurisdiction over this claim.  It is well-established that the

10  court's declaratory judgment jurisdiction is discretionary.  *See Geni-Chol Int'l, Inc. v. Multisonics Dev,*

11  *Corp.*, 580 F.2d 981, 985 (9th Cir. 1978); *Chesebrough-Ponds, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396

12  (9th Cir. 1982).  Thus, even in cases where a justiciable controversy exists, the court, in its discretion,

13  may decline to exercise jurisdiction.  *Id.; see also, Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207,

14  1217 (7th Cir.

15  1980).  As the court noted in *Display Research Laboratories, Inc. v. Telegen Corp.*, 133 F. Supp. 2d

16  1170, 1175 (N.D. Cal. 2001), when faced with an identical claim, there are established processes to

17  resolve the inventorship dispute with respect to patent applications.  Specifically, "Section 116 allows

18  the Commissioner to amend the patent application to name the correct inventors of the underlying

19  technology in the [] patent applications," and, "[i]f for whatever reason [Section[ 116 does not apply,

20  'the established procedure for resolving inventorship contests is through an interference proceeding in

21  the Patent and Trademark Office.'" *Id*. (citing 1 Chisum on Patents § 2.04[7][a] (West 2000)).  Like the

22  court in *Telegen Corp.*, this Court finds that the PTO's established procedure for handling inventorship

23  disputes is a better forum for Mr. Zenchelsky to bring his challenges.  Accordingly, the Court concludes

24  that exercising its jurisdiction for declaratory relief is inappropriate in this case.  Thus, with respect to

25  the Fifth Claim for Relief, the Court alternatively dismisses the Claim on this basis.

26      F.      Seventh Cause of Action - Misappropriation of Scientific Ideas and Second Cause of
              Action - Conversion

27

28      Counterdefendants urge the Court to dismiss Mr. Zenchelsky's "misappropriation of scientific

ideas" and conversion claims because the California Uniform Trade Secrets Act ("CUTSA") preempts

all common law causes of action concerning the use or disclosure of confidential information.  Mr. Zenchelsky does not dispute that the CUTSA has this effect, but argues that he has not alleged in either count that his IP was confidential or qualified as a trade secret.  Thus, Mr. Zenchelsky maintains that the CUTSA does not preclude his claims.  While Counterdefendants' argument is well-taken, reviewing the Amended Counterclaim, Mr. Zenchelsky has not expressly alleged that his IP was confidential in nature.  Thus, the Court cannot say that, as pled, Mr. Zenchelsky's claims are preempted under the CUTSA.  The Court therefore **DENIES** Counterdefendants' Motion to Dismiss the Second and Seventh Causes of Action  on the basis of preemption.

IV.     Conclusion

        For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Counterdefendants' Motion to Dismiss (Doc. #38) as follows:  The First Cause of Action for fraud is dismissed with leave to amend to correct the deficiencies as outlined in this Order.  The Fifth Cause of Action for Declaratory Judgment as to Authorship, Inventorship and Ownership and Sixth Cause of Action for Correction of Inventorship are dismissed without leave to amend.  The Counterdefendants' Motion is denied as to all other claims.

        **IT IS SO ORDERED**.

Dated: October 7, 2005

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

17